IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08–cv–01856–REB–KMT

JAMES JOSEPH SCHNEIDER,

      Plaintiff,

v.

ELAINE COOPER, L.P.C.,
DAVID NEWCOMB C.A.C. III,
LORI LAMM-SWANSON, L.P.C.,
VICKI RODGERS, and
JEFFERSON CENTER FOR MENTAL HEALTH,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Kathleen M. Tafoya**
**United States Magistrate Judge**

This case involves claims that Defendants violated Plaintiff's rights under the First and Fourteenth Amendments.  This matter is before the court on "Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint or For Summary Judgment with Incorporated Brief Authority" ([Doc. No. 73] [filed June 8, 2009] [hereinafter "Mot."]), filed by Defendants Elaine Cooper, L.P.C. (hereinafter "Cooper"), James David Newcomb C.A.C.III (hereinafter "Newcomb"), Lori Swanson-Lamm, L.P.C. (hereinafter "Swanson-Lamm"), and Vicki Rodgers

(hereinafter "Rodgers").[1]  Plaintiff filed his Response on August 4, 2009.  ([Doc. No. 82] [hereinafter "Resp."].)  Defendants filed their Reply on August 19, 2009.  ([Doc. No. 89] [hereinafter "Reply"].)  On August 6, 2009, Defendant Jefferson Center for Mental Health (hereinafter "JCMH") joined in the Motion to Dismiss.  (Doc. No. 85.)  Jurisdiction is premised upon 42 U.S.C. § 1983 (2008).  This motion is ripe for review and recommendation.

## STATEMENT OF THE CASE

The following facts are taken from Plaintiff's Second Amended Prisoner Complaint ([Doc. No. 69] [filed May 18, 2009] [hereinafter "Compl."]) and the parties' submissions with respect to this Recommendation.  At the time relevant to this action, Plaintiff was an inmate in the custody of the Colorado Department of Corrections (hereinafter "CDOC").  (Mot. at 3.)  On May 15, 2007, as a condition of his parole agreement, Plaintiff entered the John Eachon Re-Entry Program (hereinafter "JERP") (Compl. at 5; Resp. at 3), and was allowed placement at a halfway house in Lakewood, Colorado (Mot. at 3).  Plaintiff claims the JERP program is "run jointly" by the CDOC, Colorado State Parole Department, and Defendant JCMH.  (Compl. at 5.)  Defendants assert, "[t]he JERP program is a collaborative program designed to provide services and therapy to inmates with mental health conditions who are entering the community."  (Mot. at 3.)  Defendants are employees of JCMH, a private, non-profit entity.  (Compl.; Mot. at 3, Ex. A [Rodgers Aff.], ¶ 2; Ex. B [Newcomb Aff.], ¶ 2; Ex. C [Swanson-Lamm Aff.], ¶ 2.)  Defendants

---

[1] Plaintiff incorrectly identified Defendant James David Newcomb C.A.C.III as "David Newcomb," and Defendant Lori Swanson-Lamm, L.P.C. as "Lori Lamm-Swanson" in the Second Amended Complaint.

Cooper and Newcomb were JCMH therapists who treated Plaintiff while he was in the JERP

program.  (Mot. at 3.)  Defendant Swanson-Lamm was Defendant Cooper's supervisor and the

"JERP Director."  (*Id*.; Compl. at 6.)  According to Plaintiff, Defendant Rodgers was the JCMH

"Privacy Officer and Deputy Chief Operating Officer" while he was in JERP.  (Compl. at 9.)

    In Claim One, Plaintiff alleges that during a meeting at the halfway house in March of

2008, Defendant Cooper disclosed to third persons non-medical information that Plaintiff had

revealed to her during the course of therapy.  (Compl. at 7.)  Plaintiff asserts that Defendant

Cooper stated, "You know, Mr. Schneider, I told Donna [Parole Officer Flannery] that you said

during therapy that she was stupid and lazy."  (*Id*.)  Plaintiff claims this constituted a "breach of

confidentiality" and caused him emotional injuries.  (*Id*. at 7–8.)  Plaintiff asserts that Defendant

Cooper violated "various Colorado State laws," as well as his rights under the Due Process and

Equal Protection Clauses of the Fourteenth Amendment "by unlawfully divulging confidential

information gained during the course of therapy."  (*Id*. at 8.)  Plaintiff maintains that his

Fourteenth Amendment rights were violated because "he is rightly entitled to privacy and to fair

treatment and due to the fact that it is not customary or common practice for therapists to breach

confidentiality."  (*Id*.)

    Plaintiff states that he filed a Health Insurance Portability and Accountability Act

(hereinafter "HIPAA") complaint with JCMH concerning Defendant Cooper's alleged beach of

confidentiality.  (*Id*. at 5.)  Plaintiff states that on April 25, 2008, Defendant Cooper learned of

Plaintiff's HIPAA complaint and stated, "You know you [Plaintiff] could have gotten me fired

for that.  It is time for you to move on.  You shouldn't be in JERP anymore."  (*Id*.)  Plaintiff

alleges that on May 4, 2008, Defendant Cooper directed him not to attend any future one-on-one or group therapy sessions.  (*Id.*)  Plaintiff claims, again on May 4, 2008, that Defendant Cooper "thereby terminat[ed] Plaintiff from JERP."  (*Id.*)  Plaintiff states that Defendant Cooper also directed him to attend a meeting on May 6, 2008.  (*Id.*)

On May 6, 2008, Plaintiff states he attended the meeting with Defendants Swanson-Lamm, Cooper, Newcomb, his Parole Officer Donna Flannery (hereinafter "P.O. Flannery"), and Parole Supervisor Connie Vaughan (hereinafter "P.O. Vaughan").  (*Id.* at 6.) During the meeting, Plaintiff claims Defendant Swanson-Lamm told him, "You are not mentally ill, you are a liar, a manipulator, [and] we only did you a favor by letting you into the JERP Program."  (*Id.*)  Plaintiff also claims Defendant Swanson-Lamm, P.O. Flannery and P.O. Vaughan "verbally berated" him.  (*Id.* at 5–6.)  Plaintiff claims P.O. Flannery and P.O. Vaughan "officially sanctioned . . . this inhumane treatment . . . because neither one tried to stop [it]."  (*Id.* at 6.)  Sometime after the meeting, Plaintiff claims P.O. Flannery requested he sign official paperwork terminating him from JERP, which Plaintiff refused to do.  (*Id.*)  Plaintiff claims his parole was eventually revoked on June 18, 2008, "in part, because of the termination from the JERP program."  (*Id.* at 7.)  Plaintiff states that his JERP termination constituted a " 'regressive move' that entailed punitive sanctions" imposed by the CDOC.  (*Id.*)

In Claim Two, Plaintiff claims the "JERP team, which includes P.O. Flannery, discriminated against Plaintiff . . . by terminating him from JERP" in response to his filing the HIPAA complaint against Defendant Cooper.  (*Id.* at 6, 9.)  Plaintiff claims his termination from JERP violated his rights under the Due Process and Equal Protection Clauses of the Fourteenth

4

Amendment.  (*Id*. at 9.)  Plaintiff also claims his termination from JERP violated his rights under the HIPAA Act.  (*Id*.)

In Claim Three, Plaintiff alleges Defendant Rodgers "failed in her duty" as JCMH Privacy Officer and Deputy Chief Operating Officer to protect Plaintiff from the action taken by the JERP team members.  (*Id*.)  Plaintiff claims he contacted Defendant Rodgers several times seeking her assistance "to stop the discrimination."  (*Id*.)  Plaintiff claims Defendant Rodgers "did nothing to help Plaintiff and was thus instrumental in [his] termination from JERP."  (*Id*.)

In Claim Four, Plaintiff claims Defendant JCMH improperly trained its employees and provided inadequate employee oversight.  (*Id*. at 10.)  As a result, Plaintiff alleges Defendant JCMH also "failed to protect Plaintiff from discrimination" by its employees "and was thus instrumental in Plaintiff's termination from JERP."  (*Id*.)  Plaintiff claims Defendants Rodgers and JCMH violated his rights under the HIPAA Act and the Due Process and Equal Protection Clauses of the Fourteenth Amendment "by discriminating against Plaintiff for making a HIPAA complaint."  (*Id*.)

Plaintiff seeks "actual damages" including "lost wages, summer tuition lost and books," as well as punitive and exemplary damages totaling $105,352.00.  (*Id*. at 11.)  Defendants seek dismissal on the following grounds: 1) the court lacks diversity subject matter jurisdiction; 2) Plaintiff has failed to plead a claim under Sections 1983 or 1985; and 3) the court should not exercise supplemental jurisdiction over Plaintiff's state law claims.  (Mot.)

Defendants' Motion is styled as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1) or, in the alternative, a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (Mot. at 1.)

## STANDARD OF REVIEW

### 1.  Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint").  The plaintiff's *pro se* status does not entitle him to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### 2.  *Fed. R. Civ. P. 12(b)(1) - Lack of Subject Matter Jurisdiction*

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter."  Fed. R. Civ. P. 12(b)(1) (2007).  Dismissal under Rule 12(b)(1) is not a

judgment on the merits of a plaintiff's case.  Rather, it calls for a determination that the court

lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the

allegations of the complaint.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)

(recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction

when specifically authorized to do so).  The burden of establishing subject matter jurisdiction is

on the party asserting jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th

Cir. 1974).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding

in which it becomes apparent that jurisdiction is lacking."  *See Basso*, 495 F.2d at 909.

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the

complaint, without regard to mere conclusory allegations of jurisdiction."  *Groundhog v. Keeler*,

442 F.2d 674, 677 (10th Cir. 1971).  When considering a Rule 12(b)(1) motion, however, the

court may consider matters outside the pleadings without transforming the motion into one for

summary judgment.  *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  Where a party

challenges the facts upon which subject matter jurisdiction depends, a district court may not

presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to

allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve

disputed jurisdictional facts under Rule 12(b)(1)."  *Id.*

**3.      *Fed. R. Civ. P. 12(b)(6) - Failure to State a Claim Upon Which Relief Can Be Granted***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss

a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6)

(2007).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that

the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d

1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

   "A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual

allegations are true and construes them in the light most favorable to the plaintiff." *Hall v.

Bellmon*, 935 F.2d 1006, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means

that the plaintiff pled facts which allow "the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of

analysis. First, the court identifies "the allegations in the complaint that are not entitled to the

assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or

merely conclusory. *Id*. at 1949–51. Second, the Court considers the factual allegations "to

determine if they plausibly suggest an entitlement to relief." *Id*. at 1951. If the allegations state

a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 1950.

   Notwithstanding, the court "need not accept conclusory allegations without supporting

factual averments." *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir.

1998). "[T]he tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1940. "Threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Id.* Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1949 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

## ANALYSIS

### I.     *Health Insurance Portability and Accountability Act Claims*

Plaintiff claims Defendants Cooper, Newcomb, Swanson-Lamm, Rodgers, and JCMH violated his rights under HIPAA, Pub. L. 104–191, 110 Stat. 1936 (Aug. 21, 1996). (Compl. at 6–10.) As a preliminary matter, the court notes that in enacting HIPAA, Congress mandated the establishment of national standards for protection of the privacy of individually identifiable health and medical information. *See Wallin v. Dycus*, 2009 WL 798839 (D. Colo. 2009). Consistent with this statutory mandate, the Department of Health and Human Services ("HHS") promulgated rules and regulations governing the release and transmittal of "individually identifiable health information" by health care providers. *See* Title 45 C.F.R. §§ 160.101 et seq.

Under the terms of HIPAA, "[a] covered entity may not use or disclose protected health information, except as permitted or required by [specific provisions of HIPAA]." Title 45 C.F.R. § 164.502(a) (emphasis added). "Protected health information" includes "individually identifiable health information" that is "[t]ransmitted or maintained in any other form or medium." 45 C.F.R. § 160.103. "Individually identifiable health information . . . [r]elates to the past, present, or future physical or mental health or condition of an individual . . . and . . .

identifies the individual . . . ." *Id.* The court finds that revealing that the plaintiff called his

parole officer "stupid and lazy" is not protected health information.

Additionally, all courts to consider the matter have held that HIPAA itself does not create

a private right of action. *See Acara v. Banks*, 470 F.3d 569, 571–72 (5th Cir. 2006) ("While no

other circuit court has specifically addressed this issue . . . [e]very district court that has

considered this issue is in agreement that the statute does not support a private right of action.")

*See Univ. of Colo. Hosp. Auth. v. Denver Pub. Co.*, 340 F. Supp.2d 1142, 1145 (D. Colo. 2004)

(also collecting cases); *Agee v. United States*, 72 Fed. Cl. 284 (2006); *Walker v. Gerald*, 2006

WL1997635 (E. D. La. June 27, 2006); *Poli v. Mountain Valleys Health Ctrs., Inc.*, 2006 WL

83378 (E. D. Cal. 2006); *Cassidy v. Nicolo*, 2005 WL 3334523 (W.D.N.Y. 2005); *Johnson v.

Quander*, 370 F. Supp. 2d 79 (D.D.C. 2005); *O'Donnell v. Blue Cross Blue Shield of Wyo.*, 173

F. Supp. 2d 1176 (D. Wyo. 2001); *Means v. Ind. Life & Accident Ins. Co.*, 963 F. Supp. 1131 (M.

D. Ala. 1997); *Wright v. Combined Ins. Co. of Am.*, 959 F. Supp. 356 (N. D. Miss. 1997); *Taylor

v. Morse*, 2008 WL 3822962 (N. D. Cal. 2008); *Logan v. Dept. of Veterans Affairs*, 357 F. Supp.

2d 149, 155 (D.D.C. 2004); *Sconiers v. California Dept. of Social Services*, 2008 WL 53231, *4

(E. D. Cal. 2008).

The courts have reasoned first that HIPAA does not contain any express language

conferring privacy rights upon individuals and does not identify a class of persons as the

intended beneficiaries of its protections. Instead, it focuses on regulating persons that have

access to an individual's medical information and who conduct certain health care transactions.

42 U.S.C. § 1320d-1.

Secondly, HIPAA expressly provides the penalties for improper disclosures of medical information, *see* 42 U.S.C. §§ 1320d-5, d-6, and limits enforcement to the Secretary of HHS. This specific delegation of its enforcement is a strong indication that Congress intended to preclude private enforcement. *Univ. of Colo. Hosp. Auth.*, 340 F. Supp. 2d at 1144–45 (The specific punitive enforcement provision precludes any finding of an intent by Congress to create a private right of action.); *Logan*, 357 F. Supp. 2d at 155 ("[T]he law specifically indicates that the Secretary of HHS", not a private individual, "shall pursue the action against an alleged offender.").

Since HIPAA does not make available a private right or cause of action as a means of enforcement, plaintiff states no claim based upon alleged violations of the HIPAA protections. Further, the information allegedly disclosed is not covered by the HIPAA provisions. These flaws cannot be cured by amendment. Therefore, Plaintiff's Section 1983 claims based on alleged violations of HIPAA or on Defendant Rodgers' alleged failure to address the HIPAA complaint must be dismissed with prejudice.

## II.     *Failure to State a Claim under Section 1983*

"In order to state a 42 U.S.C. § 1983 claim, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *B.Willis, C.P.A., Inc. v. BNSF Ry. Corp.*, 531 F.3d 1282, 1305 n.27 (10th Cir. 2008). *See also Parratt v. Taylor*, 451 U.S. 527, 535 (1981) overruled in part on other grounds by *Daniels v. Williams*, 474 U.S. 327, 331–32 (1986) (two essential elements to a § 1983 action are conduct committed by a person

acting under color of state law, and a deprivation of constitutional rights as a result.)  Therefore, in order to state a Section 1983 claim against these defendants and for jurisdiction to exist, Plaintiff must present facts showing both that Defendants Cooper, Newcomb, Swanson-Lamm, Rodgers and JCMH were acting under color of state law and that they deprived Plaintiff of a right secured by the Constitution and laws of the United States.

In Claims Two, Three, and Four Plaintiff claims "Defendants violated the 14th Amendment Due Process and Equal Protection clause[s] . . . by discriminating against Plaintiff for making a HIPAA complaint."  (Compl. at 9–10.)  However, reviewing the *pro se* Complaint liberally, *see Trackwell*, 472 F.3d at 1243, Plaintiff's allegations in Claims Two through Four are more accurately viewed as attempted claims for retaliation in violation of the First Amendment. *See Smith v. Maschner*, 899 F.2d 940, 946 (10th Cir. 1990) (retaliation for filing lawsuits and administrative grievances "violates . . . the inmate's First Amendment rights" (citation omitted)). In any event, the court need not determine whether Plaintiff's claims arise under the First or Fourteenth Amendment since Plaintiff has failed to demonstrate action under color of law, a threshold requirement for either claim under Section 1983.

Under Section 1983, liability attaches only to conduct occurring 'under color of law.' " *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995) (citing *National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988)).  Part of "[t]he judicial obligation is . . . to 'preserv[e] an area of individual freedom by limiting the reach of federal law' and avoi[d] the imposition of responsibility on a State for conduct it could not control." *Brentwood Academy v. Tennessee Secondary Athletic Ass'n*, 531 U.S. 288, 295 (2001) (quoting

12

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936–37 (1982)).  Private conduct does not satisfy the "under color of" element unless "the State is responsible for the specific conduct of which the plaintiff complains."  *Id.*; *American Manufs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999).

Defendants Cooper, Newcomb, Swanson-Lamm, and Rodgers work for a private entity, Defendant JCMH, which is not a governmental body or agency.  (Compl.; Mot. at 3, Ex. A [Rodgers Aff.], ¶ 2; Ex. B [Newcomb Aff.], ¶ 2; Ex. C [Swanson-Lamm Aff.], ¶ 2.)  Liability under Section 1983 cannot attach unless the actions of the private entity or its employees rise to the level of state action.  *General Steel Domestic Sales, LLC v. Denver/Boulder Better Business Bureau*, 2009 WL 535780, *9–10  (D. Colo. 2009) (J. Ebel sitting by designation); *see, e.g., Darr v. Town of Telluride*, 495 F.3d 1243, 1256 (10th Cir. 2007).

"Application of the state-action doctrine 'frequently admits of no easy answer.' " *General Steel Domestic Sales*, at *9–10 (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350 (1974)).  The Supreme Court has articulated four tests to consider in determining whether a private party's actions are "fairly attributable" to the state.  *Lugar*, 457 U.S. at 928, 937.  In all the tests for state action, the required inquiry is fact-specific.  *Id.* at 939; *Gallagher*, 49 F.3d at 1448.

## A.   *Nexus Test*

The first state action test considers "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson*, 419 U.S. at 351.  Under this approach, a state

normally can be held responsible for a private decision "only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). The test ensures that the State will be held liable for constitutional violations only if it is responsible for the specific conduct of which the plaintiff complains. *Id*.

There is no factual allegation indicating the CDOC or the Colorado State Parole Department exercised power over, participated in, or encouraged any person employed by JCMH to treat the plaintiff in a given manner, to terminate Plaintiff from JERP, or to train/supervise JCMH employees one way or the other. The state parole officers are not alleged to have had any involvement with the alleged original disclosure of confidential information nor with the HIPAA complaint and only received notice of the termination on May 6, 2008. (Compl. at 5–6.) Plaintiff himself claims the decision to terminate him was actually made by Defendant Cooper on May 4, 2008. (*Id*. at 5.) There is no allegation the parole officers even knew a HIPAA complaint had been filed by Plaintiff until, at the earliest, at the meeting on May 6, 2008, if at all.

Plaintiff has failed to demonstrate a sufficiently close nexus between the State and these defendants' actions as employees of JCMH to constitute state action.

### B.    *Symbiotic Relationship Test*

The second test set forth by the Supreme Court analyzes whether "the state has 'so far insinuated itself into a position of interdependence' with a private party that there is a 'symbiotic relationship' between them." *Gallagher*, 49 F.3d at 1447 (quoting *Burton v. Wilmington Parking Auth*., 365 U.S. 715, 725 (1961); *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 175

(1972)).  The essence of a symbiotic relationship is some sort of interdependence between the private entity and the government body.  *Burton*, 365 U.S. at 725.  There is no bright-line rule for determining whether a symbiotic relationship exists between a government agency and a private entity.  *Gallagher*, 49 F.3d at 1452.  "Questions as to how far the state has insinuated itself into the operations of a particular private entity and when, if ever, the operations of a private entity become indispensable to the state are matters of degree."  *Id.*

The JERP program provides mental health counseling services to parolees for their transition into society.  (Rodgers Aff., ¶¶ 5–6; Newcomb Aff., ¶¶ 5–6; Swanson-Lamm Aff., ¶¶ 5–7.)  The CDOC provides incarceration for individuals convicted of crimes.  The mere payment by the state for services provided to a government agency or department is generally insufficient to establish a symbiotic relationship between the government and a private entity.  *See Gallagher*, 49 F.3d at 1453; *Rendell-Baker v. Kohn*, 457 U.S. 830, 830 (1982); *Browns v. Mitchell*, 409 F.2d 593, 595–96 (10th Cir. 1969).  Plaintiff has failed to allege any facts supporting a symbiotic relationship existed between the State and JCMH and its employees.

### C.    Joint Action Test

The third test is satisfied if a private party is "a willful participant in joint activity with the State or its agents."  *Gallagher*, 49 F.3d at 1447 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)).  Unlike the symbiotic relationship inquiry, the focus of this test is not on long-term interdependence between the state and a private entity but instead on whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights.  *Id.*  This test is sometimes employed in analyzing allegations that private

15

citizens acted in concert with police officers in making arrests, for instance.  *See Carey v. Continental Airlines Inc.*, 823 F.2d 1402 (10th Cir. 1987); *Lee v. Town of Estes Park*, 820 F.2d 1112 (10th Cir. 1987).  In applying the joint action test, the Tenth Circuit has approved adopting the requirements for establishing a conspiracy under Section 1983.  *Gallagher*, 49 F.3d at 1447. To prove a conspiracy between private parties and the state under Section 1983, the plaintiff must show a joint participation, agreement, or "meeting of the minds" to violate constitutional rights.  *Aly v. Rocky Mountain Holding, L.L.C.*, 203 F.3d 834, 2000 WL 18878, at *4 (10th Cir. 2000).

There is no indication P.O. Flannery or P.O. Vaughan were in any way involved in the alleged disclosure of non-medical information, the reaction to the HIPAA complaint, the HIPAA complaint itself, the decision to terminate Plaintiff from JERP, or JCMH's training and/or supervision of its employees.  The Complaint alleges only that P.O. Flannery and P.O. Vaughan attended one meeting and were informed that Plaintiff was terminated from JERP and the reasons therefor.  (Compl. at 5–6.)  While Plaintiff alleges P.O. Flannery unsuccessfully attempted to elicit Plaintiff's signature on official termination documents after JCMH had decided to terminate him from the program, "the mere acquiescence of a state official in the actions of a private party is not sufficient" to constitute state action.  *Gallagher*, 49 F.3d at 1453. Plaintiff has failed to show joint action between P.O. Flannery, P.O. Vaughan, or any other state official and the defendants.

### D.    *Exclusive Function Test*

Lastly, a finding of state action can be made if a private party exercises "powers traditionally exclusively reserved to the State." *Jackson*, 419 U.S. at 352. This test has proved difficult to satisfy. "While many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State.' " *Flagg Bros. Inc. v. Brooks*, 436 U.S. 149, 158 (1978) (quoting *Jackson*, 419 U.S. at 356). The Supreme Court has found only a few functions to satisfy this test including administering elections of public officials, *Terry v. Adams*, 345 U.S. 461, 468–70 (1953), the operation of a company-owned town, *Marsh v. Alabama*, 326 U.S. 501, 505–09 (1946), and the management of a city park, *Evans v. Newton*, 382 U.S. 296, 298–302 (1966).

The parties have cited no law, nor does the court's research reveal that the administration of mental health therapy to provide community reentry guidance is an exclusive and traditional government function. Plaintiff claims Defendant JCMH acted under color of law because, "by attempting to deinstitutionalize mentally ill inmates," it was "furthering the goals of the state." (Resp. at 8.) The fact that a private entity contracts with the government to provide services or products or receives governmental funds or other kinds of governmental assistance does not automatically transform the conduct of that entity into state action. *Rendell-Baker*, 457 U.S. at 840–42; *San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.*, 483 U.S. 522, 544 (1987) ("The Government may subsidize private entities without assuming constitutional responsibility for their actions."). Therefore, Defendants cannot be said to have acted under color of state law on the basis of the exclusive function test either.

Under all four tests, Plaintiff has failed to allege conduct constituting state action and, therefore, Plaintiff has failed to sufficiently set forth any Section 1983 claims.  *See B. Willis, C.P.A., Inc.*, 531 F.3d at 1305 n.27.  Without state action, the court lacks subject matter jurisdiction over these claims.

**III.**     ***Failure to State a Section 1985 Claim***

Plaintiff also asserts a conspiracy claim pursuant to 42 U.S.C. § 1985.  (Compl. at 3.) "The essential elements of a § 1985(3) claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom."  *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993).  Furthermore, § 1985(3) applies only to conspiracies motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus."  *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

First, as noted above, Plaintiff has failed to allege facts sufficient to make out a conspiracy.  Furthermore, while Plaintiff claims he is "in a unique class as a mentally ill inmate" (Resp. at 5), he has failed to allege any facts showing that the actions taken against him were motivated by animus towards mentally ill inmates.  In fact, Defendant Swanson-Lamm questioned Plaintiff's mental illness and accused him of being a liar and manipulator.  (*See* Compl. at 6.)  Indeed, according to Plaintiff, he was terminated him from JERP for filing a HIPAA complaint, not because of any classification he may have.  (*Id*. at 9.)  Plaintiff has failed to allege two of the elements necessary for a proper Section 1985 claim.  Accordingly, Plaintiff's Section 1985 claim is properly dismissed.

18

### IV.    *Supplemental Jurisdiction*

In addition to his allegations that Defendants violated his constitutional rights, Plaintiff also claims Defendants violated several Colorado state laws, including Colo. Rev. Stat. §§ 12-43-222(1)(g), 12-43-218(1), and 12-43-214(1)(d)(IV).  (Compl. at 8.)  As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them the authority to hear.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Where the court has federal question jurisdiction, the Court has "supplemental jurisdiction over all other claims that are so related to claims in the action that they form part of the same case or controversy under Article III of the United States Constitution."  *See* 28 U.S.C. § 1367(a).  Pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966), the decision regarding whether the Federal court should exercise jurisdiction over purely state law claims rests in the sound discretion of the district court.  *See also Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 370 F.3d 1161, 1165 (10th Cir. 2004).  The Tenth Circuit has indicated that if federal claims are dismissed before trial leaving only issues of state law, the court should decline to exercise jurisdiction over the state claims.  *Ashley Creek Phosphate Co. v. Chevron USA, Inc.*, 315 F.3d 1245, 1264 (10th Cir. 2003).

As noted above, the court finds it does not have federal question jurisdiction pursuant to 42 U.S.C. §1983 or § 1985.  Plaintiff has not asserted jurisdiction pursuant to 28 U.S.C. § 1332, diversity, nor does such jurisdiction exist.  In light of these findings, the court recommends that supplemental jurisdiction not be exercised over Plaintiff's state law claims.

### V.     18 U.S.C. § 242

Plaintiff also asserts jurisdiction pursuant to 18 U.S.C. § 242.  (Compl. at 2.)  Section 242 makes it a crime to wilfully deprive persons under color of law of their rights under the constitution or laws of the United States.  18 U.S.C. § 242.  However, this section does not form a basis for civil liability.  *Kelly v. Rockefeller*, 69 F. App'x 414, 415–16 (10th Cir. 2003).

**WHEREFORE**, for the foregoing reasons, the court respectfully

**RECOMMENDS** that "Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint or For Summary Judgment with Incorporated Brief Authority" (Doc. No. 73) be **GRANTED** and that this case be **DISMISSED** with prejudice in its entirety.

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the

right to appeal from a judgment of the district court based on the proposed findings and

recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir.

1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite

the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of*

*Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and

recommendation must be both timely and specific to preserve an issue for *de novo* review by the

District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming*

*Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain

portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those

portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their

failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).

*But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does

not apply when the interests of justice require review).

Dated this 16th day of December, 2009.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge